UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROBERT WILHELM,<br><br>   Plaintiff,<br><br>   v.<br><br>MACKINAC FINANCIAL CORPORATION, WALTER J. ASPATORE, ROBERT HARRIS ORLEY, RANDOLPH C. PASCHKE, MARTIN A. THOMSON, PAUL D. TOBIAS, DAVID R. STEINHARDT, DENNIS B. BITTNER, JOSEPH D. GAREA, and KELLY W. GEORGE,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Wilhelm ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Mackinac Financial Corporation ("Mackinac" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R.

§ 240.14a-9. By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Mackinac will be acquired by Nicolet Bankshares, Inc. ("Nicolet") (the "Proposed Transaction").[1]

2.   On April 12, 2021, Mackinac and Nicolet jointly announced their entry into an Agreement and Plan of Merger dated April 12, 2021 (the "Merger Agreement") to sell Mackinac to Nicolet. Under the terms of the Merger Agreement, each Mackinac stockholder will receive (a) 0.22 shares of Nicolet common stock; and (b) $4.64 in cash, for each share of Mackinac common stock they own (the "Merger Consideration").[2]

3.   On June 9, 2021, Mackinac filed a Definitive Proxy Statement on Schedule 14A with the SEC. The Proxy Statement, which recommends that Mackinac stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information both essential and critical to the decision to approve the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming

---

[1] Non-party Nicolet is a Wisconsin corporation with its principal executive offices located at 111 North Washington Street, Green Bay, Wisconsin 54301. Nicolet's common stock trades on the Nasdaq Global Select Market under the ticker symbol "NCBS."

[2] The value of the Proposed Transaction is approximately $248 million.

stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Mackinac owns several commercial properties from which it operates several of its retail branches in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Mackinac.

10. Defendant Mackinac is a Michigan corporation with its principal executive offices located at 130 South Cedar Street, Manistique, Michigan 49854. Mackinac is a registered bank holding company whose principal subsidiary is mBank ("mBank" or the "Bank"). Mackinac's common stock trades on the Nasdaq Global Select Market under the ticker symbol "MFNC."

11. Defendant Walter J. Aspatore ("Aspatore") is Lead Director and has been a director of the Company since 2004.

12. Defendant Robert Harris Orley ("Orley") has been a director of the Company since 2004.

13. Defendant Randolph C. Paschke ("Paschke") has been a director of the Company since 2004.

14. Defendant Martin A. Thomson ("Thomson") has been a director of the Company since 2004.

15. Defendant Paul D. Tobias ("Tobias") is Chairman and Chief Executive Officer ("CEO") of the Company, and has been Chairman and a director of the Bank since December 2004.

16. Defendant David R. Steinhardt ("Steinhardt") has been a director of the

Company since 2012.

17. Defendant Dennis B. Bittner ("Bittner") has been a director of the Company since 2001.

18. Defendant Joseph D. Garea ("Garea") has been a director of the Company since 2007.

19. Defendant Kelly W. George ("George") is President of the Company, President and CEO of the Bank, and has been a director of the Company since October 2006.

20. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On April 12, 2021, Mackinac and Nicolet issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> GREEN BAY, Wis. and MANISTIQUE, Mich., April 12, 2021 -- Nicolet Bankshares, Inc. (NASDAQ: NCBS) ("Nicolet") and Mackinac Financial Corporation (NASDAQ: MFNC) ("Mackinac") today jointly announced the execution of a definitive merger agreement, pursuant to which Nicolet will acquire Mackinac and its wholly-owned banking subsidiary, mBank.
>
> Based on the financial results as of December 31, 2020, the combined company will have pro forma total assets of $6.1 billion, deposits of $5.2 billion and loans of $3.9 billion, and Mackinac would represent approximately 25% of the combined company's year-end assets.
>
> Mike Daniels, President and CEO of Nicolet National Bank said, "The acquisition of mBank is an important step in Nicolet's planned growth.

5

This deal is not about expanded geographies but rather about the characteristics of the communities we will serve. Together, we will combine two organizations that understand the positive impact that a strong community bank can make. We look forward to becoming an integral part of the Upper Peninsula and Northern Michigan.

We want to offer two initial thoughts when it comes to the question of what's next. First, we know that scale and efficiencies matter in community banking today. Our customers continue to tell and show us that convenience no longer means a branch on every corner. Second, we understand that actions speak louder than words. We want the communities to know that we are committed to realizing the promise of this acquisition. After the transaction is complete, people will see a strong community bank focused on keeping decisions local. We will build and expand on mBank's legacy of being a great steward of its communities. Together, we will find the best ways to serve to become the lead-local community bank."

Paul Tobias, Chairman and CEO of Mackinac said, "On behalf of our Board of Directors, I am pleased to announce our merger into the Nicolet family. We have found a strategic partner that is a true community bank with deep commitments to the markets we serve. The market cultures of our respective organizations mesh well, and the greater lending access will strengthen our value to current and prospective customers. This deal represents a fair transaction that unlocks shareholder value for us both."

Bob Atwell, CEO and Chairman of Nicolet said, "Nicolet always takes the long view when it comes to acquisitions. This deal with Mackinac represents a unique and sizeable opportunity to expand Nicolet's franchise across a greater Northern footprint, while at the same time, being highly accretive to long-term shareholder value. It also opens up the possibility for future expansion into the state of Michigan, if and when the opportunity arises."

Kelly George, President and CEO of mBank said, "In Nicolet, we have found a strategic partner who shares our vision of being people-driven and community-centric. Together, we will continue to deliver personal and timely decisions through local bankers who are a part of the communities we serve. Maintaining and creating strong relationships will continue to be the value we bring to our customers."

*Transaction Information*

Under the terms of the merger agreement, Mackinac shareholders will have the right to receive 0.22 shares of Nicolet's common stock and $4.64 for each share of common stock of Mackinac Financial Corporation with total consideration to consist of approximately 80% stock and 20% cash. Based upon the closing price of Nicolet Bancshares common stock of $84.40 on April 9, 2021, the implied per share purchase price is $23.21, with an aggregate transaction value of approximately $248 million.

The estimated transaction value is a 1.69 multiple of Mackinac's tangible book value as of December 31, 2020 and equates to approximately 18.3x Mackinac's 2020 earnings per share. Additional assumptions and metrics can be found in the related Investor Presentation.

*Leadership/Employee Information*

Post-merger, Paul Tobias will join the Boards of Directors of Nicolet Bankshares and Nicolet National Bank. All customer-facing employees of Mackinac are expected to stay on in the same capacity.

*Approvals and Closing Date*

The transaction has been unanimously approved by the boards of directors of both companies. It is subject to both Mackinac and Nicolet shareholder approval, regulatory approvals and other customary closing conditions and is expected to close in the third quarter of 2021. Upon consummation of the transaction, Nicolet's existing branch at 325 W. Pine Street, Eagle River, WI is expected to close and consolidate with continued service out of the legacy mBank office at 400 E. Wall Street, Eagle River, WI.

*Advisors*

Hovde Group, LLC provided a fairness opinion to the Board of Directors and Bryan Cave Leighton Paisner LLP served as legal counsel to Nicolet in this transaction. Piper Sandler & Co. served as financial advisor and delivered a fairness opinion to the Board of Directors of Mackinac, and Honigman LLP served as Mackinac's legal counsel.

**The Proxy Statement Contains Material Misstatements or Omissions**

22. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Mackinac's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

23. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) Mackinac's and Nicolet's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler"); and (b) Piper Sandler's potential conflicts of interest.

*Material Omissions Concerning Mackinac's and Nicolet's Financial Projections and Piper Sandler's Financial Analyses*

24. The Proxy Statement is materially deficient because it fails to disclose material information relating to Mackinac's and Nicolet's financial projections, including all line items underlying net income and dividends per share over the projection period.

25. The Proxy Statement similarly fails, with respect to the financial projections for Nicolet, to disclose Nicolet's dividends per share and net income over the projection period.

8

26. The Proxy Statement also describes the various valuation analyses that Piper Sandler performed in support of its fairness opinion. That description, however, wrongly omits key inputs and assumptions underlying these analyses. Without this information, as described below, Mackinac's public stockholders are precluded in their ability to understand these analyses. As a result, stockholders cannot determine what weight, if any, to place on Piper Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27. The Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Piper Sandler in connection with the financial advisor's comparable companies and precedent transactions analyses.

28. With respect to Piper Sandler's *Net Present Value* analysis of Mackinac, the Proxy Statement fails to disclose: (a) the inputs and assumptions underlying the discount rates ranging from 11.00% to 15.00%; and (b) quantification of the estimated terminal values for Mackinac.

29. With respect to Piper Sandler's *Net Present Value* analysis of Nicolet, the Proxy Statement fails to disclose: (a) he inputs and assumptions underlying the discount rates ranging from 10.00% to 14.00%; and (b) the estimated terminal values for Nicolet.

30. With respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Proxy Statement fails to disclose the (a) accretion to Nicolet's estimated EPS

9

(excluding one-time transaction costs and expenses) in the years ending December 31, 2021 through December 31, 2025 and (b) dilution to Nicolet's estimated tangible book value per share at close.

31. Without such undisclosed information, Mackinac stockholders cannot evaluate for themselves whether the financial analyses performed by Piper Sandler were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Piper Sandler's opinion and analyses should factor into their decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32. The omission of this information renders the statements in the "Prospective Financial Information of Mackinac," "Prospective Financial Information of Nicolet" and "Opinion of Mackinac's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Piper Sandler's Potential Conflicts of Interest***

33. The Proxy Statement omits material information regarding potential conflicts of interest of Piper Sandler, including how much of Piper Sandler's compensation is contingent upon the consummation of the Proposed Transaction.

34. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the

evaluation, exploration, selection, and implementation of strategic alternatives.

35. The omission of this material information renders the statements in the "Opinion of Mackinac's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Mackinac's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

11

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Nicolet's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper Sandler, and Piper Sandler's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     The Individual Defendants acted as controlling persons of Mackinac within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Mackinac, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual

Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Mackinac's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Mackinac, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the

Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Mackinac stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 24, 2021

**WEISSLAW LLP**

By /s/ Richard A. Acocelli
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19808
Tel: (302) 729-9100
Email: bdlong@longlawde.com